# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ANGELA D. WILSON,
2025 Fendall St. SE, Unit 205
Washington, DC 20020

    Plaintiff,

v.

TRUIST BANK
    Serve: CSC Lawyers Incorporating Service Company
    7 St. Paul Street, Suite 820
    Baltimore, MD 21202

and

EXPERIAN INFORMATION SOLUTIONS, INC.,
    Serve: CT Corporation System
        1015 15th St, NW, Suite 1000
        Washington, D.C. 20005

and

EQUIFAX INFORMATION SERVICES, LLC,
    Serve: Corporation Service Company
        1090 Vermont Ave, NW
        Washington, D.C. 20005

    Defendants.

Civil Action No. 1:21-cv-2368

## **COMPLAINT**

COMES NOW Plaintiff Angela D. Wilson, by counsel, and files this Complaint against Defendants Truist Bank ("Truist"), Equifax Information Services, LLC ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, "Defendants"). In support of her claims, Ms. Wilson alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA to ensure the "confidentiality, accuracy, relevancy, and proper utilization" of credit reports. 15 U.S.C. § 1681(b).

3. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), which is one of the FCRA's cornerstone provisions. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires it to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b). This section imposes a high, and often disregarded, standard on credit reporting agencies. *See, e.g.*, *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b), and explaining that "'assure' means 'to make sure or certain: put beyond all doubt,'" "'[m]aximum' means the 'greatest in quantity or highest degree attainable[,]' and 'possible' means something 'falling within the bounds of what may be done, occur or be conceived'" (quoting Webster's Third New International Dictionary 133, 1396, 1771 (1993)).

4. As Defendants are aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) to ensure that its initial reporting of information is accurate and that this duty is "central" to the consumer reporting agencies' duties of care under that portion of the FCRA:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

5.  The FCRA also contains detailed requirements that both consumer reporting agencies and furnishers must follow when a consumer disputes information in their credit files.

6.  Section 1681i establishes the dispute requirements and obligations that consumer reporting agencies must follow. For example, when a consumer disputes "the completeness or accuracy of any item of information contained" in the consumer's file, the FCRA requires the credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information" within 30 days. 15 U.S.C. § 1681i(a)(1). As part of this process, the consumer reporting agency must provide prompt notice to the furnisher of the information and consider all of the information presented in a consumer's dispute. 15 U.S.C. § 1681i(a)(2), (4).

7.  Additionally, § 1681s-2(b) provides additional protections to consumers that are designed to protect the furnishing of derogatory, erroneous information by their creditors by imposing investigative duties on creditors after a consumer disputes the inaccuracy with the credit bureaus. 15 U.S.C. § 1681s-2(b)(1).

8.  In this case, Truist inaccurately reported that Ms. Wilson's account, which had been included in her Chapter 7 Bankruptcy discharge, had a past due balance.

9. This information was incorrect because the debt had been discharged years earlier.

10. Experian and Equifax knew that this information was inaccurate. It was reporting that the Truist account was charged off in January 2015 and that Ms. Wilson had obtained a Chapter 7 discharge in December 2015. Therefore, it was clear from the face of Equifax's and Experian's own reporting that Ms. Wilson's Truist account was included in her bankruptcy and no longer had a past-due balance.

11. Despite the fact that this information was facially inconsistent, Defendants allowed Truist to place this information in Ms. Wilson's credit files without any procedural safeguards in place to flag or suppress this inaccurate and inconsistent information.

12. After Ms. Wilson disputed the inaccurate information with Equifax and Experian, Defendants failed to correct her credit reports. Therefore, Ms. Wilson alleges claims against Equifax and Experian for failing to reasonably ensure the maximum possible accuracy of her credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

13. Ms. Wilson also alleges claims against Truist for failing to fully and properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## JURISDICTION AND VENUE

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division, where Ms. Wilson resides.

## PARTIES

16. Ms. Wilson is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

17. Truist is a corporation with its principal place of business in WinstonSalem, North Carolina. It is a furnisher governed by the FCRA.

18. Equifax is a foreign limited liability company authorized to do business in the District of Columbia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

19. Experian is a foreign corporation authorized to do business in the District of Columbia. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

20. In April 2014, Ms. Wilson opened a store credit card at Home Depot, which was serviced by Truist (the "Truist Account").

21. Ms. Wilson experienced financial difficulties and fell behind on her payments for the Truist Account.

22. Truist charged off Ms. Wilson's account in January 2015.

23. Ms. Wilson filed for Chapter 7 bankruptcy in August 2015 and received a Chapter 7 discharge in December 2015.

24. Ms. Wilson's Truist Account was included in her Chapter 7 discharge.

25. The Chapter 7 bankruptcy and discharge are reported in the public records section of her Experian and Equifax credit report with a discharge date of December 2015.

26. Several years later, in October 2019, when Ms. Wilson was undergoing a employment background report with the Department of Homeland Security, she realized that Equifax and Experian were reporting the Truist Account.

27. But neither Experian nor Equifax reported that the Truist Account was discharged in bankruptcy. Instead, they both reported that the account had an outstanding balance of more than $3,000.

28. This information was incorrect because the outstanding balance was discharged as a result of Ms. Wilson's discharge and should have been reported as $0.

29. Ms. Wilson's potential employer indicated that because of Experian and Equifax's inaccurate reporting, Ms. Wilson must pay the balance that the report indicated she owed, despite the fact that she no longer owed the debt.

30. Experian and Equifax have a long history of government enforcement actions, consumer complaints, and lawsuits establishing that it and the other national consumer reporting agencies systematically inaccurately report information related to debts discharged in bankruptcy. *See, e.g., White v. Experian Info. Solutions, Inc., et al.*, Case No. 8:05-cv-01070 (C.D. Cal.); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a bankruptcy lawyer's survey of approximately 900 clients found that 66% of Equifax reports erroneously list one or more discharged debts as due and owing).

31. In fact, in *White*, Experian and Equifax were the subject of a national court injunction requiring it to ensure that it did not report tradelines that were included in Chapter 7 discharges that were inconsistent with the information received in its public records data.

32. Experian and Equifax were therefore on actual notice of and should have prevented the inaccuracies addressed in this complaint and published to Ms. Wilson's potential employer.

33. Despite the frequent inaccuracies related to accounts discharged in bankruptcy, Experian and Equifax continue to maintain unreasonable procedures regarding the manner in which it publishes bankruptcy-related information.

34. In fact, neither Equifax nor Experian had any procedures in place to flag this inconsistent information or prevent it from appearing in Ms. Wilson's credit file. All that would have been required is a review of the records Experian and Equifax have in their possession and that they were reporting about Plaintiff, yet Experian and Equifax do not have appropriate procedures in place to ensure its reporting is as maximally accurate as possible. On multiple occasions within the two years prior to filing this lawsuit, Ms. Wilson disputed the Truist Account with both Equifax and Experian.

35. Ms. Wilson also contacted Truist directly, including by telephone and by letter, and explained that the Truist Account had been discharged in bankruptcy and should not be reporting with a past-due balance.

36. Upon information and belief, Equifax and Experian forwarded Ms. Wilson's disputes to Truist.

37. In response to Ms. Wilson's disputes, each of the Defendants failed to conduct an adequate and substantive investigation.

38. Instead, after merely looking at the account notes in its system, Truist verified the inaccurate past-due balance and forwarded that information to each of the consumer reporting agencies.

39. Each of the consumer reporting agencies accepted the outcome of Truist's so-called investigation and took no additional steps to investigate Ms. Wilson's dispute. Instead, each continued to report Ms. Wilson's credit file exactly as Truist instructed.

40. Therefore, the inaccurate information remained on Ms. Wilson's credit reports.

41. As a result of Defendants' conduct, Ms. Wilson suffered significant actual damages, including an inability to obtain multiple car loans at competitive rates, denials for a store

credit card, and publication of false and defamatory information as part of security clearance procedure.

### *Defendants' FCRA Violations Were Willful*

42. Experian and Equifax continue to rely on Truist's credit reporting even though they know that Truist is an unreliable furnisher.

43. Discovery will show that Equifax and Experian each have received thousands of consumer disputes in which the consumer complained that Truist was inaccurately reporting the consumer's account history, a past due balance, or the consumer's account status.

44. There are also more than 500 complaints in the CFPB consumer complaint database about Truist's reporting of inaccurate information on consumers' credit reports.

45. In addition, Truist and its predecessor companies SunTrust and BB&T have been named as a defendant in hundreds of lawsuits by consumers alleging FCRA violations for inaccurate credit reporting. In many of these lawsuits, Equifax or Experian were named as a co-defendant.

46. Despite notice of these lawsuits, neither Experian nor Equifax has any procedures in place to at any stage of their relationship with a furnisher (such as Truist) to: (a) receive and review its credit reporting procedures; (b) receive and review its dispute investigation procedures; or (c) audit—even selectively—any of the furnisher's accounts or credit reporting to determine if it is accurately reporting consumer file histories.

47. Discovery will show that in the last 10 years, no employee of Equifax or Experian has had a telephone, video conference or in-person meeting longer than 30 minutes to meaningfully inquire about, learn or examine the procedures used by Truist to comply with the FCRA.

48. Moreover, as a standard practice, Equifax and Experian do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

49. Upon information and belief, and consistent with their standard policies and procedures, Equifax and Experian automatically generated their "investigation" results once Truist verified the status of Ms. Wilson's account, and they did not take any additional actions to verify the accuracy of the information that Truist provided.

50. Instead, Equifax and Experian blindly accepted Truist's version of the facts and continued to report the inaccurate, derogatory information on Ms. Wilson's credit reports.

51. Equifax and Experian continue the practice of parroting the furnisher's response despite numerous lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

52. Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

53. Therefore, at all times relevant to this Complaint, Equifax's and Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, their conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

54. Truist's processing of consumer disputes was also willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Truist's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EQUIFAX AND EXPERIAN)**

55. Ms. Wilson incorporates the allegations set forth above.

56. Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure the maximum possible accuracy of Ms. Wilson's credit reports and credit files.

57. Because of Equifax's and Experian's conduct, Ms. Wilson suffered actual damages, including an inability obtain multiple car loans at competitive rates, denials for a store credit card, publication of false and defamatory information as part of security clearance procedure, loss of employment opportunities, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

58. Equifax's and Experian's violations of § 1681e(b) were willful, rendering them liable to Ms. Wilson for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

59. In the alternative, Equifax's and Experian's violations were negligent, which entitles Ms. Wilson to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (EQUIFAX AND EXPERIAN)

60. Ms. Wilson incorporates the allegations set forth above.

61. Equifax and Experian violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Truist with all the relevant information regarding Ms. Wilson's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Wilson in violation of §1681i(a)(4); and (4) failing to promptly modify the Truist account to remove any derogatory reporting or indication that the account was a charge-off after a lawful reinvestigation in violation of § 1681i(a)(5)(A).

62. Because of Equifax's and Experian's violations of §1681i, Ms. Wilson suffered actual damages, including an inability to obtain multiple car loans at competitive rates, denials for a store credit card, publication of false and defamatory information as part of security clearance procedure, loss of employment opportunities, decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

63. Equifax's and Experian's violations of § 1681i were willful, rendering them liable to Ms. Wilson for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined under 15 U.S.C. § 1681n.

64. In the alternative, Equifax's and Experian's violations were negligent, entitling Ms. Wilson to recovery under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
## (TRUIST)

65. Ms. Wilson incorporates the allegations set forth above.

66. On one or more occasion within the past two years, Truist violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Wilson's disputes.

67. When Ms. Wilson disputed her account with the consumer-reporting agencies, Truist used a dispute system named "e-Oscar," which the consumer-reporting agencies and their furnisher-customers, like Truist, have adopted to process consumer disputes. E-Oscar is an automated system, and its use by the consumer-reporting agencies is systemic and uniform.

68. When the consumer-reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

69. Upon information and belief, the ACDV form is the method that Truist uses to receive consumer disputes under 15 U.S.C. § 1681i(a).

70. Upon information and belief, the consumer-reporting agencies forwarded Ms. Wilson's dispute to Truist using an ACDV form.

71. Truist understood the nature of Ms. Wilson's disputes when it received the ACDV form.

72. Upon information and belief, when Truist received the ACDV form containing Ms. Wilson's disputes, Truist followed a standard and systemically unlawful process in which it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the consumer-reporting agency.

73.     Upon information and belief, in accordance with its standard procedures, Truist does not conduct any substantive review to determine if the information in its system is accurate when it receives a consumer dispute through e-Oscar.

74.     Because of Truist's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Wilson suffered actual damages, including an inability to obtain multiple car loans at competitive rates, denials for a store credit card, publication of false and defamatory information as part of security clearance procedure, loss of employment opportunities, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

75.     Truist's violations of § 1681s-2(b)(1)(A) were willful, rendering it liable to Ms. Wilson for damages under 15 U.S.C. § 1681n.

76.     In the alternative, Truist was negligent, entitling Ms. Wilson to damages under 15 U.S.C. §1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(TRUIST)**

77.     Ms. Wilson incorporates the allegations set forth above.

78.     On one or more occasions within the past two years, Truist violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

79.     As Ms. Wilson detailed in the previous Count, Truist has elected to use the e-Oscar system to receive FCRA disputes from the consumer-reporting agencies.

80.     Truist failed to consider the other information that the consumer-reporting agencies provided regarding Ms. Wilson's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

81. Truist knew the meaning of the dispute codes used by the consumer reporting agencies in e-Oscar.

82. Truist does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer reporting agencies.

83. Truist understood Ms. Wilson's disputes and that she claimed that her account was reporting inaccurately.

84. Despite this, Truist did not update its incorrect reporting regarding Ms. Wilson's account.

85. Because of Truist's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Ms. Wilson suffered actual damages, including an inability to obtain multiple car loans at competitive rates, denials for a store credit card, publication of false and defamatory information as part of security clearance procedure, loss of employment opportunities, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

86. Truist's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

87. In the alternative, Truist was negligent, entitling Ms. Wilson to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Wilson demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**ANGELA D. WILSON**

By: */s/ Kristi C. Kelly*

Kristi Cahoon Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiff*